IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEPIZE MONTGOMERY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CIVIL NO. 09-cv-129-GPM ) |
| C. ZYCK, *et al.*, | ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff, LePize Montgomery, formerly an inmate at USP-Marion, brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

Based on the allegations of the complaint, the Court finds it convenient to divide Montgomery's *pro se* complaint into three counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1**

Montgomery alleges that on December 3, 2006, Defendant Zyck knowingly gave his private medical records to another inmate. He further alleges that this inmate disseminated Montgomery's medical information, particularly his HIV status, to other inmates. Montgomery alleges that as a result he was verbally abused and physically beaten by other inmates, but later he was placed in protective custody. Montgomery claims that as a result of this abuse, he suffered emotional and physical damage.

Although the Seventh Circuit has yet to squarely address the issue of whether an inmate has a privacy right in his medical records, *see Massey v. Helman*, 196 F.3d 727, 742 n. 8 (7th Cir. 1999); *Anderson v. Romero*, 72 F.3d 518, 523 (7th Cir. 1995), the Second and Third Circuits have expressly recognized that such a right exists, *see Powell v. Schriver,* 175 F.3d 107, 112-13 (2nd Cir. 1999); *Doe v. Delie*, 257 F.3d 309, 315-17 (3rd Cir. 2001).[1] Those courts found, however, that "a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen." *Doe*, 257 F.3d at 317. "Specifically, an inmate's constitutional right may be curtailed by a policy or regulation that is shown to be 'reasonably related to legitimate penological interests.'" *Id. (quoting Turner v. Safley*, 482 U.S. 78, 89 (1987)). In each of these cases, the courts considered whether an

---

[1] In the context of a challenge to the segregation of HIV-positive inmates from the general population, the Eleventh Circuit hinted that an inmate's right of privacy in medical information might exist. *Harris v. Thigpen*, 941 F.2d 1495, 1513-14 (11th Cir. 1991). *See also Anderson*, 72 F.3d at 523 (the constitutional rights of an HIV-positive inmate are not infringed when prison officials undertake to warn prison officials and inmates who otherwise may be exposed to contagion, even if those warnings are administered on an ad hoc basis).

inmate had a protected interest in maintaining the confidentiality of a specific medical condition, rather than a blanket right to all medical privacy. *Doe*, 257 F.3d at 317 (HIV-positive status); *Powell*, 175 F.3d at 112 ("individuals who are transsexuals are among those who possess a constitutional right to maintain medical confidentiality"). Further, a distinction was drawn for the purpose of that disclosure. *Powell*, 175 F.3d at 112 ("gratuitous disclosure of an inmate's confidential medical information as humor or gossip . . . violates the inmate's constitutional right to privacy").

Applying these standards to the allegations in the complaint, the Court is unable to dismiss this claim at this time.

## **COUNT 2**

While in protective custody on February 25, 2007, Montgomery alleges that Defendant Lockridge served (or allowed to be served) burnt or overcooked pasta with meat sauce that was unfit to eat. Montgomery claims he must take a certain medication each day on a full stomach and that Lockridge knew this but refused to replace the meal. Montgomery alleges that Lockridge told him that if he wanted to take his medication, he would have to eat the burnt pasta. Montgomery claims Lockridge's actions violated his Eighth Amendment rights to be free from the infliction of cruel and unusual punishment. He also claims that Lockridge's actions denied him proper medical care.

The Eighth Amendment has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.*, (*quoting Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Constitution

also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

Not all prison conditions trigger Eighth Amendment scrutiny, only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *See Rhodes,* 452 U.S. at 346; *James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *See McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *See Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement "exceeded contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett,* 17 F.3d 1574, 1579 (7th Cir. 1994). The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim. The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires a prison official had a sufficiently culpable state of mind. *See Wilson*, 501 U.S. at 298; *McNeil*, 16 F.3d at 124. In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976);

*DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson*, 955 F.2d at 22. It is well-settled that mere negligence is not enough. *See, e.g., David v. Cannon*, 474 U.S. 344, 347-48 (1986).

Applying these standards to the facts alleged, Montgomery's claim of cruel and unusual punishment and lack of proper medical care must be dismissed. Montgomery was not denied a basic human need; food was served. Additionally, there was no substantial serious risk of harm present. This claim against Defendant Lockridge is dismissed with prejudice.

**<u>COUNT 3</u>**

Finally, Montgomery alleges that on December 24, 2006, he gave a copy of his administrative remedy form relating to the two incidents described above to Associate Warden Nelson and that Nelson gave the request for remedy to Defendant Bledsoe, Warden at USP Marion. Defendant Bledsoe responded to the request on January 23, 2007. Montgomery alleges that Defendant Bledsoe knowingly and willfully disregarded his situation and thereby created an environment of abuse which allowed Defendants Zyck and Lockridge to harm him.

The well-established rule is that "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *See also Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions). As Chief Judge Easterbrook recently stated,

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way.

> Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. [The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care. *See Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993).

*Burks*, 555 F.3d at 595.

Defendant Bledsoe is not liable for the actions of his subordinates, therefore this count is dismissed with prejudice.

### APPOINTMENT OF COUNSEL

Montgomery also requests that the Court appoint him counsel (Doc. 3). There is no absolute right to appointment of counsel in a civil case. *Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *Peterson v. Nadler*, 452 F.2d 754 (8th Cir. 1971). When presented with a request to appoint counsel, the Court must make the following inquiries: "(1) has the ... plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself." *Pruitt v. Mote*, 503 F.3d 647, 854-55 (7th Cir. 2007). With regard to the first step of the inquiry, there is no indication at all whether Montgomery has attempted to obtain counsel or been effectively precluded from doing so. Therefore, the motion for appointment of counsel is **DENIED** without prejudice to refiling it at a later time.

### DISPOSITION

**IT IS HEREBY ORDERED** that **COUNT 2** and **COUNT 3** are **DISMISSED** with prejudice in their entirety. Because there are no other pending claims against them, **IT IS FURTHER ORDERED** that Defendants **LOCKRIDGE** and **BLEDSOE** are **DISMISSED** from this action with prejudice. Plaintiff is advised that, within the Seventh Circuit, this dismissal counts as a strike for purposes of § 1915(g). *See George v. Smith*, 507 F.3d 605, 607-08 (7th Cir. 2007); *Boriboune v. Berge*, 391 F.3d 852, 855 (7th Cir. 2004).

**IT IS FURTHER ORDERED** that Plaintiff shall complete and submit a USM-285 form for the **UNITED STATES ATTORNEY for the SOUTHERN DISTRICT of ILLINOIS** and **the ATTORNEY GENERAL of the UNITED STATES** within **THIRTY (30) DAYS** of the date of entry of this Memorandum and Order. The Clerk is **DIRECTED** to send Plaintiff TWO (2) USM-285 forms with Plaintiff's copy of this Memorandum and Order. **Plaintiff is advised that service will not be made on any defendant until he submits these completed USM-285 forms**.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendant **ZYCK**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint, including copies for the United States Attorney and the Attorney General, to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendant **ZYCK** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure, *and* on the United States Attorney for the Southern District of Illinois and the Attorney General of the United States, Washington, D.C., pursuant to Rule 4(i) of the Federal Rules of Civil Procedure. All costs of service shall be advanced by the United States. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will

compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of the Federal Bureau of Prisons who no longer can be found at the work address provided by Plaintiff, the Bureau shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from the Bureau of Prisons pursuant to this Order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of

the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** of his continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts during the pendency of this action. This notification shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs. Failure to provide such notice may result in dismissal of this action. *See* FED.R.CIV.P. 41(b).

**IT IS SO ORDERED.**

DATED: 8/11/09

s/ *G. Patrick Murphy*
G. Patrick Murphy
United States District Judge